[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ARTICLE I THE DISSOLUTION OF THE MARRIAGE
It is found that all of the allegations of plaintiff's complaint have been proven and that the marriage has broken down irretrievably. The marriage of the parties is therefore dissolved.
 ARTICLE II THE DETERMINATION OF THE VALUE OF THE MARITAL HOME
The principal asset of the parties is their jointly owned home situated at 18 Ash Drive, Windsor, Connecticut. Plaintiff in his financial affidavit values the property at $130,000 while defendant in her most recent financial affidavit values it at $179,000.
No appraisal of the property was submitted by either party, and the court's notes on this subject are limited. They indicate that plaintiff, using funds from an accident settlement to be discussed later, paid $57,000 in cash to purchase the home in 1997. In 1999 the parties mortgaged the property for $20,000, this amount being expended for additions and improvements to the home.
The court determines that the valuation stated by the plaintiff is, on all of the evidence' available to the court, the more credible of the two and finds the value of the marital home to be $130,000.
 ARTICLE III THE MARITAL ESTATE OF THE PARTIES
Plaintiff
CT Page 16101
 One half equity in 18 Ash Drive, Windsor, CT
 Total value $130,000 — Mtg. — 16,000 ________
Total equity $114,000
½ interest $57,000
1992 B.M.W. 5,000
1989 Ford F150 500
Household furniture —
3 Bank accounts 100
Mutual funds 58,686
I.R.A. Smith Barney 14,714
401K —
 Life Insurance (term only) — ________ Subtotal $135,900
Defendant
 One half equity in 18 Ash $57,000 Drive, Windsor, CT
1998 Nissan Pathfinder 14,000
C.S.E. Credit Union 675
Primerica Life Insurance F.V. $150,000 C.S.V. —
Van Kemper Investments 53 _______ Subtotal $71,728 CT Page 16102
Total Marital Estate $207,628
 ARTICLE IV AN EXAMINATION OF THE EVIDENCE AS IT RELATES TO SEC. 46-b-81c C.G.S.
A. General Background Information
The plaintiff husband, who is forty-three years of age, and the defendant wife, who is forty-two, were married on May 10, 1985, seventeen years ago. They are the parents of four children, ranging in age from seven to sixteen. Plaintiff is presently employed as a carpenter for the Pinney Construction Company, receiving a gross weekly wage of $800.00 with a net weekly income after the usual deductions of $631. Defendant is employed part-time as a licensed practical nurse in a South Windsor convalescent home, working two days per week. She added that she has a pending application for a forty hour work week. Her present gross weekly income is $374.00 with a weekly net after the usual deductions of $325.00.
The parties have secondary school educations with defendant having attended college for two additional years. Both parties appear to be in reasonably good health.
B. Fault
It can be stated at the onset that there is no evidence whatsoever that infidelity, physical abuse or excessive use of alcohol or drugs was the cause of the breakdown of this marriage. It appears that there was a lack of communication between the parties that gradually increased over the years. In plaintiff's words "there was no communication between her and me." Defendant added "we differed in disciplining the children. We stopped living together in 1996 when he first filed for divorce." Both parents are deeply religious, and it appears to the court that for one reason or another they were unable to get along together.
C. The Contributions of the Parties to the Marital Estate
It should first be noted that the parties shared traditional roles in their everyday living and in raising their family. The plaintiff husband and the defendant wife both worked hard, he in his full-time job as a carpenter, she raising a family of four children while working part-time at various jobs. They had little money and lost their first house through CT Page 16103 foreclosure.
The financial condition of the family changed dramatically after plaintiff sustained an accident to his left hand while working with a saw on July 1, 1991. He sustained the loss of three fingers as a result and in 1997 recovered $333,000 for his injuries: $33,000 of this amount was paid to his attorneys, $33,000 was given to the churches of the two parties, $57,000 was used to purchase their present home, with the balance for the most part being invested in mutual funds. The financial affidavits reflect for the most part what remains of the settlement.
D. Other Factors
Giving consideration to the physical disability of the plaintiff and the improving skills of defendant as a practical nurse, it is felt that the vocational skills of the parties are about equal. Plaintiff's opportunity for the future acquisition of capital assets and income exceeds to some extent that of defendant.
Conclusion
Having considered all of the factors set forth in C.G.S. § 46b-81c and having given particular weight to a predominating factor, i.e. the contribution of the parties to the marital estate, it is concluded that the marital estate should be divided as follows:
Plaintiff 62%
Defendant 38%
 ARTICLE V THE DIVISION OF THE MARITAL ESTATE IN ACCORDANCE WITH THE FINDINGS MADE IN ARTICLE IV (supra)
Gross Total Marital Estate $207,628
 Less Amount Due G.A.L. as per stipulation of the parties — 1,050 ________ NET TOTAL MARITAL ESTATE $206,578
Plaintiff's Share (62%) $128,078
Defendant's Share (38%) $ 78,500 CT Page 16104
Plaintiff Shall Take and Have
 Whole equity in 18 Ash Drive, Windsor, CT $114,000
1992 B.M.W. 5,000
1989 Ford F150 500
Household furniture —
3 Bank Accounts 100
I.R.A. Smith Barney 401K 14,614
 Life Insurance (term only) — ________ $134,214 Less Amount Due Defendant — 6,136 ________ Total Due Plaintiff $128,078
Defendant Shall Take and Have
1998 Nissan Pathfinder $14,000
C.S.E. Credit Union 675
Primerica Life Insurance C.S.V. —
Van Kemper Investments 53
Mutual Funds 57,636
 Amount due from plaintiff 6,136 _______ Total Due Defendant $78,500
 ARTICLE VI SUPPLEMENTAL ORDERS RELATING TO THE DISTRIBUTION OF THE MARITAL ESTATE
CT Page 16105
A. Defendant will, on or before forty-five days from the date hereof, convey to plaintiff by quitclaim deed all her right, title and interest in premises known as No. 18 Ash Drive, Windsor, Connecticut.
Simultaneously plaintiff will pay to defendant the sum of $6,136.
B. Each party will execute all documents necessary to carry out the orders of this court.
C. Plaintiff will hold defendant harmless concerning any encumbrances now on said property.
D. Prior to distribution of the marital estate the sum of $1,050 shall be paid therefrom to Jane Kinney Krotek, guardian ad litem for the minor children.
 ARTICLE VII ORDERS CONCERNING THE MINOR CHILDREN
A. The Recommended Custody and Parenting Orders dated October 1, 2002 and submitted to this court by Jane Kinney Knotek, guardian ad litem for the four minor children, are approved with the exception of paragraphs 3, 5 and 6, and are made orders of this court.
B. With reference to paragraph 3 of this proposal/order, and giving consideration to the shared parenting arrangement, it is felt that the wiser course would be not to issue a child support order at this time, and it is so ordered.
C. Concerning paragraphs 5 and 6 of this proposal/order, this court retains jurisdiction to consider the issue of an educational support order at a future time.
 ARTICLE VIII ALIMONY
Having considered all of the factors set forth in C.G.S. § 46b-82, in particular the length of the marriage (17 years), as well as the vocational skills of the parties and their employability, it is ordered that plaintiff pay to defendant as alimony the sum of $40 per week for a period of eight years.
Said orders of alimony are non-modifiable as to term only, but shall CT Page 16106 sooner terminate upon the remarriage of the defendant or the death of either party. In the event of defendant's cohabitation with an unrelated male, the provisions of C.G.S. § 46b-86 (b), shall govern.
 ARTICLE IX OTHER ORDERS
A. Life Insurance
Plaintiff shall continue to maintain all life insurance policies presently in effect during such time as he shall be required to pay alimony to the defendant.
B. Counsel Fees
No award of counsel fees is made to either party.
C. Liabilities
Each party shall be solely responsible for all liabilities listed on his or her financial affidavit and shall hold the other party harmless in that regard.
 __________________ John D. Brennan Judg Trial Referee December 10, 2002
DOCKET NO. FA99 0722756 S SUPERIOR COURT ALLAN A. SHIELDS JUDICIAL DISTRICT
v. OF HARTFORD
GLORIA JDEE SHIELDS OCTOBER 1, 2002
 RECOMMENDED CUSTODY AND PARENTING ORDERS
1. CUSTODY/PRIMARY RESIDENCE:
The parties shall have joint legal custody of their four minor children: TAWANA SHIELDS, born March 4, 1986; JANICE SHIELDS, born August 18, 1987; JESSICA SHIELDS, born July 1, 1990; and ANDREA SHIELDS, born February 5, 1995. CT Page 16107
The parties will have a shared parenting arrangement. Primary physical residence for Tawana will be with the Defendant Mother. Primary physical residence for Janice, Jessica and Andrea will be with the Plaintiff Father in the marital home at 18 Ash Street, Windsor, Connecticut.
2. PARENTING SCHEDULE:
Parenting schedule between the parties will be reasonable and flexible. Said schedule is open and parties will attempt to share quality time of the children as equally as possible taking into account the children's schedules and their best interest. Every weekend all four children will be together and will alternate between the Father's residence and the Mother's residence. At least one night during the week, all of the children will stay overnight together with the Mother. In addition, at least one night during the week the children will all have dinner together with the Mother.
3. CHILD SUPPORT:
An order of child support will be entered in accordance with the State of Connecticut Guidelines. Said order recognizes the shared parenting plan in effect. If an order is entered, it will be effectuated through an immediate wage withholding.
4. EDUCATION:
The children will continue to be enrolled in the Windsor School District. Each parent shall be entitled to complete, detailed information from any teacher or school giving instructions to the children and be furnished with copies of all reports given by them. Each parent is to contact the school to get report cards and other information sent to them.
5. COLLEGE EDUCATION:
Prior to the division of any marital assets by the parties, a college fund will be immediately established for the benefit of the four minor children. Said fund will provide for each child the cost of a four-year undergraduate program at University of Connecticut to include tuition, room board and fees as outlined in the attached Exhibit A. It is recognized that the undergraduate in-state student budget for 2002-2003 school year is $12,122.00. The oldest child, Tawana, is expected to enter college in the Fall of 2004 and the youngest child, Andrea, is expected to enter college in the Fall of 2013. CT Page 16108
6. EDUCATIONAL SUPPORT ORDER:
Not withstanding the recommendation in Paragraph 5 above, the parents are ordered to provide education support for the children, as outlined in Public Act 02-128, to attend an institution of higher education or a private occupational school for the purpose of attaining a bachelor's degree, other undergraduate degree or other appropriate vocational instruction.
7. VACATIONS:
A. Summer: Each parent may have two uninterrupted week with the children. Notice of request for vacation time must be received by the other parent 60 days before the request time is to commence.
B. School Year: During school vacations (Christmas, February and April), the parties will parent the children according to the previously designated schedule, however both parents will be flexible and cooperate with the other to provide the children with possible unexpected opportunities for visitation or travel.
8. HOLIDAYS:
The parents will alternate the following major holidays:
 Halloween — with Mother in 2002 and in all even years following; Thanksgiving Day — with Father in 2002 and in all even years following;
 Christmas Eve — with Mother in 2002 and in all even years following; Christmas Day — with Father in 2002 and in all even years following; New Years Eve — with Mother in 2002 and in all even years following; New Year's Day — with Father in 2003 and in all odd years following; Easter Sunday — with Mother in 2003 and in all odd years following; and 4th of July — with Father in 2003 and in all odd years following.
Children will spend Mother's Day and Mother's Birthday with the Defendant and Father's Day and Father's Birthday with the Plaintiff despite who has the underlying parental responsibility for the children on that particular day.
9. LONG WEEKENDS:
For the federally recognized holidays (excluding those designated in CT Page 16109 Paragraph 5) which fall on a Monday/Friday the children will spend the day with the parent who had responsibility for the children for that weekend.
10. TELEPHONE CONTACT:
The minor children shall have daily uninterrupted telephone contact with the non-resident parent.
11. INSURANCE:
The Plaintiff Father shall continue to provide health insurance for the minor children through his place of employment. If medical insurance should become available to the Defendant Mother at her place of employment at reasonable cost, the parties will confer as to which insurance is more complete and appropriate to meet the needs of the children. The parties shall divide any and all unreimbursed medical and dental expenses with Father paying 62% and Mother paying 38%. Each party is responsible for providing to the other parent receipts and request for payment on a timely basis. Other parent will reimburse the expenses within 30 days of receipt. Each parent shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant, or specialist attending the children for any reason whatsoever and to be immediately furnished with copies of any reports given by these professionals to the other parent. Each parent will inform the other of any emergency, or of any doctor or dentist they take any of the children to for medical attention;
12. TRAVEL:
Neither party will take the children out of the State of Connecticut for longer than 12 hours without notifying the other parent prior to departure. During any travel period, parties will be available by cell phone for the non-custodial parent to speak with the children. If the parties do not have a cell phone they will provide phone numbers where the children can be easily reached. The children's passports will be applied for updated and held by a mutually agreed upon third party.
13. FEDERAL/STATE TAX:
Father shall claim Janice and Jessica as a dependent for tax purposes and Mother shall claim Tawana and Andrea. During any period that there is an odd number of dependants, the parties will alternate claiming Andrea as a dependant. CT Page 16110
IT IS IMPERATIVE that each of the parties foster a feeling of affectionbetween the children and the other parent; neither party shall doanything which would estrange the children from the other parent; norwhich would injure the opinion of the children as to the other parent orwhich would impair the natural development of the children's love andrespect for each of the parent.
Respectfully Submitted,
______________________________________ Jane Kinney Knotek, Guardian ad Litem CT Page 16111